# EVANS v. GLENS FALLS INSURANCE COMPANY.

No. 2150. Decided January 31, 1911 (113 Pac. 1019).

1. INSURANCE—TERMINATION OF POLICY—MISTAKE—ESTOPPEL. Defendant company issued a policy of insurance to plaintiff to expire September 25, 1907, and in October, 1907, a person acting as plaintiff's agent obtained from defendant's agent, a reduction of the amount of the policy and of the premium, nothing being said as to an extension, and the agent in granting the reduction on a slip attached to the policy inadvertently wrote "1909" for "1907" as the time when the policy expired. In May, 1907, the plaintiff received the policy with the slip attached, and in February, 1907, was given permission to remove the goods covered by the policy, on which there was a loss occurring in November, 1907. *Held*, that the defendant was not estopped by its conduct or laches from asserting that the indorsement was a mistake, and that it did not intend thereby to extend the term of insurance. (Page 470.)

2. INSURANCE—ACTIONS—EVIDENCE—FINDINGS. Evidence in an action on a fire policy *held* insufficient to support findings favorable to plaintiff. (Page 471.)

3. INSURANCE—ACTION ON POLICY—EVIDENCE—BURDEN OF PROOF. Plaintiff declared on a policy of fire insurance alleged to have been made for one year to September 25, 1907, and to have been modified in October, 1907, by reducing the insurance and extending the policy for two years until September 25, 1909, and that it was in force at the time of loss November, 1907, which allegations were denied by the defendant. Plaintiff introduced the policy, in the body of which the date of expiration was stated as September 25, 1907, and on the back of which it was stated that it expired September 25, 1907, and that the premium was forty-one dollars and seventy cents. A slip attached to the policy showing a reduction of the policy and the premium stated: "Insurance under this policy is hereby reduced to two thousand five hundred dollars. Premium reduced to thirty-four dollars and seventy-five cents"—and on the margin of the slip were indorsements, "Extra Premium, $Nil, Return Premium, six dollars and ninety-five cents, Amount of Policy, three thousand dollars, and Date of expiration, Sept. 25, 1909." The date of expiration thus shown was an apparent clerical error made at the time the policy was reduced: *Held*, that the plaintiff had not sustained the burden of proof, since the words in the margin of the slip were merely words and figures descriptive of the policy, and not a substantial modification of it. (Page 472.)

APPEAL from District Court, Third District; *Hon. Geo. G. Armstrong,* Judge.

Action by Agnes Evans against the Glens Falls Insurance Company.

Judgment for plaintiff. Defendant appeals.

REVERSED AND REMANDED FOR NEW TRIAL.

*Willey & Willey* and *Pennel Cherrington* (*C. S. Varian* of counsel) for appellant.

*Gustin & Gillette* for respondent.

STRAUP, J.

This is an action on a policy of fire insurance. The plaintiff had judgment. The defendant appeals.

In the body of the policy it is recited that the defendant, in consideration of "forty-one and 70/100 dollars premium, does insure Mrs. Agnes Evans," the plaintiff, "for the term of one year from the 25th day of September, 1906, to the 25th day of September, 1907," against a loss by fire "to an amount not exceeding three thousand dollars" on certain property therein described, consisting of household goods stored in "Korn's warehouse," at Salt Lake City. On the back of the policy is indorsed: "Expires September 25, 07. Property, H. H. Furniture. Am't. $300. Premium, $41.70. Mrs. Agnes Evans." On the face of the policy is attached a white slip, in which is recited that the loss, if any, is payable to Benj. J. Lauer as his interest may appear. Attached to the face of the policy is also a pink slip (a regularly printed form with the blanks filled in. by pen), which in words and figures reads as follows:

The following indorsement made and entered on policy and copied on register this *seventeenth* day of *October*, 1906.

Name of insured, *Agnes Evans*.

| | |
|---|---|
| Extra Premium, $*Nil*<br>Return     ″     , $          6.95<br>Amount of Pol. $3000<br>Date of expira-<br>tion, *Sept*. 25, 1909.<br>Always add in any in-<br>dorsement permitting<br>removal, the words:<br>"This policy is hereby<br>made to cover same prop-<br>erty in new location. The<br>liability in former loca-<br>tion to cease from this<br>date." | *Insurance under this policy is hereby reduced to* $2500. *Premium reduced to* $34.75. |

[Italics indicate portions written in.]

Attached to the face of the policy is still another white slip dated the 14th day of February, 1907, which gave the insured permission to remove the goods from Korn's warehouse to the warehouse of Redman Van & Storage Company at Salt Lake City. On the 13th day of November, 1907, the goods were destroyed by fire. Proof of loss was made on the 9th day of February, 1908. The defendant refused to pay the loss on the ground that the term of insurance had expired on the 25th day of September, 1907, nearly four months before the fire.

In the complaint it was alleged that the defendant on the 25th day of September, 1906, in consideration of a premium of forty-one dollars and seventy cents, insured the property of the plaintiff "in the sum of three thousand dollars for the term of one year, and thereafter, and on the 17th day of October, 1906, by an indorsement duly made and entered thereon for a valuable consideration, said insurance was reduced to the sum of two thousand, five hundred dollars, and thereupon said policy was by said indorsement extended to expire September 25, 1909." A copy of the policy, together with the slips refrred to, was attached to and made a part of the complaint. The complaint also

contained the usual allegations of loss by fire, the ownership, and the value of the property, the furnishing of proofs of loss, and the defendant's refusal to pay the loss. The defendant filed a general demurrer for want of facts, which was overruled. It then answered, admitting the execution and delivery of the policy on the 25th day of September, 1906, in the sum of three thousand dollars, for the term of one year from the 25th day of September, 1906, and that on the 17th day of October, 1906, the amount of insurance and premium was reduced, but denying that the term of insurance was extended by indorsement or otherwise beyond the 25th day of September, 1907, or that there was any consideration paid for the alleged extension, and averring that the policy had expired, and was not in force at the time of the fire. It further averred that the words and figures, "Sept. 25/1909," written after the printed words on the margin of the pink slip "date of expiration," on the 17th day of October, 1906, when the amount of insurance and premium was reduced, were inadvertently and unintentionally written by the defendant's agent, and that he erroneously wrote "1909" for "1907," and that it was not the intention of the parties to extend the term of the insurance beyond the 25th day of September, 1907, and that no such agreement of extension was had or made. Substantially the same averments were made by it in a counterclaim in which it especially alleged that the policy expired on the 25th day of September, 1907; that "on the 17th day of October, 1906, it was mutually agreed by and between the plaintiff and the defendant that said policy should be modified and said insurance should be reduced from three thousand dollars to two thousand, five hundred dollars, and that the premium should be reduced from forty-one dollars and seventy cents to thirty-four dollars and seventy-five cents, and accordingly on said day said policy was so modified and such insurance reduced," as evidenced by the pink slip attached to the policy, but that in writing the words and figures "Sept. 25/1909," after the printed words "date of expiration," the agent of defendant unintentionally and inadvert-

ently wrote the figures "1909," instead of "1907," and that
the policy with such erroneous indorsement "was uninten-
tionally and inadvertently and unconsciously accepted by
the plaintiff;" that the indorsement so made "did not con-
form to the true and actual intention of the parties, and that,
in order to make the indorsement conform" to such inten-
tion, "it is necessary that said indorsement be amended and
reformed so that the figures '1909' should read '1907.'" It
thereupon prayed for a reformation of the policy in such
particular and for a cancellation of it. The plaintiff filed
a reply denying the material allegations of the counterclaim,
and pleading an estoppel on account of laches, conduct, and
neglect on the part of the defendant.

The issues presented by the counter claim were first tried
to the court, who found the facts substantially as follows:
On the 25th day of September, 1906, the plaintiff obtained
a loan from Lauer through one Block, his attorney in fact,
and gave him a promissory note, to secure which she gave
a mortgage upon the property in question, consisting of
household goods. Block, acting for Lauer, refused to make
the loan unless the property was insured. A portion of the
loan was paid to the plaintiff. Block retained the rest of it
to pay some bills owing by plaintiff, a commission to him-
self for making the loan, the first month's interest, drayage
and storage charges, and the premium for the insurance. Be-
fore the insurance was obtained, Block caused the goods to
be moved and stored in Korn's warehouse in Salt Lake
City. On September 25, 1906, for the benefit of Lauer
and the plaintiff, he procured the policy of insurance from
the defendant, insuring the property against loss by fire in
the sum of three thousand dollars for a period, as expressed
in the body of the policy, of one year, or to and including
the 25th day of September, 1907, with a provision contained
upon a slip attached to the policy that the loss, if any, under
the policy, was to be paid to Lauer. On the 17th day of
October, 1906, Block applied to the agent of the defendant
for a modification of the policy. He then delivered the

38 Utah—30

policy to the agent of the defendant, who reduced the insurance from three thousand dollars to two thousand, five hundred dollars, and the premium from forty-one dollars and seventy cents to thirty-four dollars and seventy-five cents, and as evidenced by the pink slip attached to the face of the policy. The court also found that at the same time the agent of the defendant who transacted the business in its behalf wrote on that slip after the printed words, "date of expiration," the words and figures, "Sept. 25/1909." The slip was made in triplicate, a copy of which was sent to the home office of the defendant, one kept at the local office and copied in a book called "register of insurance" and one attached to the policy of insurance, and that "said policy was thereupon and by said indorsement in the writing of defendant's agent made to expire on September 25, 1909," and that the policy was thereupon redelivered to Block for the mortgagee. On the 22d day of December, 1906, the plaintiff paid and discharged the note and mortgage, whereupon Block delivered the policy to the plaintiff, who notified the defendant that Lauer's interest in the property had ceased. On the 14th day of February, 1907, the plaintiff applied to the agent of the defendant, and was given permission to remove the goods from Korn's warehouse to the warehouse of the Redman Van & Storage Company. In doing so an agent, acting for her, delivered the policy to the agent of the defendant, who, by indorsement on a slip attached to the policy, gave permission to move the goods as requested. While the goods were stored in the warehouse of the Redman Van & Storage Company they were destroyed by fire on the 13th day of November, 1907. The court further found that it was the custom of the defendant not to insure property against loss by fire in warehouses for a period longer than one year, but that the plaintiff had no knowledge of such custom; that the defendant made no claim of any mistake in the indorsement with respect to the expiration of the term of the policy until after the property was destroyed by fire; that the defendant, notwithstanding the means afforded it, made no effort to ascertain the mistake,

or to correct it, or to give any notice to the plaintiff, until after the loss had been sustained by her; that she had no information or means of knowledge that the indorsement was untrue, and relying upon the indorsement and believing it to be true, and that the property was protected against loss by fire in the sum of two thousand, five hundred dollars up to and including the 25th day of September, 1909, she obtained no other insurance.

Upon such findings the court stated conclusions of law that, "owing to the laches, conduct, and neglect of said defendant, it is not entitled to any relief in a court of equity, or to a reformation of said indorsement on said policy," and that it was not entitled to have the figures of the indorsement changed from "1909" to "1907." A judgment was thereupon entered dismissing the counterclaim.

The issues presented by the complaint were then tried to the court and a jury. The plaintiff put in evidence the policy of insurance, together with the slips attached thereto, gave proof of the ownership and value of the property and its destruction by fire, the furnishing to the defendant of proofs of loss, a demand upon it and its refusal to pay the loss, and rested. The defendant thereupon offered to prove that its agent in charge of its business at the request of Block on the 17th day of October, 1906, reduced the amount of insurance and the premium, but that there was nothing said at that time, and no transactions had, with respect to an extension of the term of insurance beyond the date of September 25, 1907, that there was no consideration paid for the claimed extension, and that the term of insurance was not in fact extended beyond the time shown in the body of the policy as originally made. The offer was refused. The defendant thereupon rested, and requested the court to direct a verdict in its favor. The court refused the request, and upon motion of the plaintiff directed a verdict in her favor. From the judgment entered upon the verdict, and the judgment dismissing the counterclaim, the defendant has prosecuted this appeal.

It chiefly urges that the facts found by the court on the issues presented by the counterclaim are not supported by the evidence, that the conclusions of law stated and the judgment rendered dismissing the counterclaim are not supported by the findings, and that the court erred in overruling the demurrer, in refusing defendant's offers of proof on the trial before the court and jury, in refusing its request to direct a verdict in its favor, and in directing a verdict in favor of the plaintiff. All these assignments raise questions involving the manner in which and the purpose for which the words and figures "Sept. 25/1909" were written on the pink slip after the printed words "date of expiration," the conduct of the parties with respect thereto, and the legal effect to be given to the words and figures as written on the pink slip when considered in connection with the policy as a whole. It is not necessary to separately consider and review these assignments. We may say that in the main the findings of the court are supported by the evidence, except in the particulars that the indorsement or writing on the pink slip "made the policy to expire on the 25th day of September, 1909," that the plaintiff had no information or means of knowledge "that the endorsement in such particular was untrue," and the inference, arising from the findings as made, that Block in obtaining the insurance acted alone for Lauer, and not also for the plaintiff. In these particulars both the plaintiff and Block testified that the plaintiff directed and authorized him to obtain insurance upon the goods, he testifying that she directed him to obtain it for one year, she for three years. The evidence is without conflict that the words and figures "Sept. 25/1909," written on the pink slip on the 17th day of October, 1906, were written inadvertently, and that the figures "1909" were by mistake written for "1907." It came about in this way, and substantially as found by the court: After the plaintiff had concluded negotiations for the loan and had directed and authorized Block to obtain insurance on the goods, she left Salt Lake City, and went to Nevada. She left part of the borrowed money with Block to pay some bills owning by her, one month's

storage and interest, drayage, a commission, and the premium for the insurance. Block obtained the policy on the 25th day of September, 1906, for three thousand dollars, and for a period of one year. The premium was forty-one dollars and seventy cents. Later he found that he did not have money enough (after paying a commission to himself of eighty-five dollars for making the loan, the interest at five per cent per month, drayage, etc.), to pay a premium of that amount. He thereupon called upon the defendant's agent who had transacted the business with him, and requested him to reduce the insurance from three thousand dollars to two thousand, five hundred dollars. Block, who had possession of the policy, and who held it for the mortgagee, took it to the office of the defendant's agent on the 17th day of October, 1906. The agent consented to a reduction of the insurance and of the premium. The agent thereupon wrote on the pink slip "insurance under this policy is hereby reduced to two thousand, five hundred dollars, premium reduced to thirty-four dollars and seventy-five cents," and on the margin thereof wrote after the printed words "date of expiration" the words and figures "Sept. 25/1909." In doing so he inadvertently wrote "1909" for "1907." It is very clearly made to appear that the agent of the defendant and Block had no conversation, nor any negotiations whatsoever, with respect to an extension of the term or period of insurance. The policy was then redelivered to Block, who kept it until the loan was paid, in December, 1906. It was then delivered to an agent of the plaintiff, who paid off the loan for her. The policy was kept by that agent until in May, 1907, when it was delivered to the plaintiff, about four months before the time expressed in the body of the policy had expired. She testified that in May, 1907, when she received the policy, she "examined the policy at that time," and saw the pink slip, and because of the indorsement thereon, believed that the policy did not expire until in September, 1909, and that she took out no other insurance. That the figures "1909" were inadvertently, and through mistake, written for "1907," is not con-

troverted by the plaintiff. She, however, contends, and the court, as stated in its conclusions, preceded upon the theory, that she had no knowledge, and no means of knowledge, of the mistake and inadvertence; that Block was not her agent, and that his mistake or his knowledge of it cannot in law be charged to her, and that the defendant, because of its laches, conduct, and neglect is now estopped from asserting that the mistake was in fact made, or that the parties did not intend to extend the term or period of insurance. These conclusions are based upon the facts that three copies of the pink slip were made, one sent to the home office, one copied in the register of insurance at the local office, and one attached to the face of the policy, and that the defendant's agent in February, 1907, attached to the face of the policy the written slip giving permission to remove the goods from one warehouse to another, and upon the deductions drawn from such facts that means of knowledge and opportunity was afforded the defendant by ordinary diligence and inspection to discover the mistake, who, in law, must be charged with a discovery and knowledge of it prior to the 25th day of September, 1907, and with negligence in not notifying the plaintiff thereof prior to that time.

We think such facts were not sufficient to work an estoppel, or to so charge the defendant with negligence. Had the defendant done some act or thing after the 25th day of September, 1907, recognizing the existence of the policy, or treating it as existing, a different principle might well be applied. The defendant's agent in granting permission in February, 1907, to move the property from one warehouse to another, when the policy admittedly was in force, cannot be said to be an act inconsistent with the claim now made, or the position taken, by the defendant. Block in obtaining the insurance and in transacting the business in that regard was the agent of the plaintiff as well as the agent of Lauer. The mistake made was the mutual mistake of Block and of the defendant's agent, for it very clearly is made to appear that neither intended to extend the period of insurance. The same principle which makes

the defendant chargeable with the mistake of its agent also renders the plaintiff chargeable with the mistake of Block. The mistake occurred while both were acting for their respective principals, and in transacting business for them within the scope of their employment and authority. The plaintiff came into the actual possession of the policy in May, 1907. She then saw and examined it. She then saw all the documents, and all the writings that the defendant had, or that it saw. She had the original documents; the defendant copies. We cannot see wherein the defendant had better means, or was afforded better opportunity, to discover the mistake than was had by, or was afforded, the plaintiff. We think the conclusions of the trial court were not justified by the findings.

However, as we view the case, the questions presented with respect to the alleged reformation and of an estoppel are not the controlling features. The plaintiff declared upon a policy alleged to have been made for a period of one year from the 25th day of September, 1906, to the 25th day of September, 1907, and alleged to have been modified in October, 1906, by reducing the amount of the insurance and extending the period of insurance to September, 1909, and alleging that the policy was in full force and effect when the fire occurred in November, 1907. The defendant in its answer denied that the period of insurance had been extended, and that the policy was in force at the time of the fire. To entitle the plaintiff to recover, clearly the burden was upon her to establish the allegations thus denied by the defendant. She ought to prove them by the production of the policy itself, together with the slips attached thereto. The policy, when so considered, does not show that the period of insurance was extended to September, 1909. Such is not the legal effect of the policy when the slip is considered in connection with the whole of the policy. The statement made on the slip "insurance under this policy is hereby reduced to two thousand, five hundred dollars, premium reduced to thirty-four dollars and seventy-five cents," well shows a modification of the policy in such particulars. The

other indorsements or writings made on the margin of the slip, "extra premium $Nil, return premium $6.95, am't of policy $3,000, date of expiration Sept. 25/1909," are mere words and figures descriptive of the policy, and not words or language in modification of it. Appropriate words and language were used in the slip showing a modification of the policy with respect to the amount of the insurance and the premium. No such words or language is used with respect to an extension or modification of the term or period of insurance. Had the date of expiration been written on the margin "September, 1906," it is very clear that such mere descriptive words would have to give way to the terms or period of insurance as expressed in the body of the policy. And for the same reason the descriptive words, "Sept. 25/1909," must likewise give way to the term or period of insurance as expressed in the body of the policy. Taking the whole policy together, including the pink slip atached to it, it is apparent on the face of it that the insertion on the slip as to the time of the expiration of the policy was a clerical error relating only to a description of the policy, and not to its substance, which other parts of the policy afford means of correcting. The plaintiff, of course, cannot be heard to say that she acted or relied upon a meaning or interpretation given by herself to the pink slip which is not justified or authorized by the language there employed, or to the policy, which it when considered as a whole will not bear. We think the policy, taking it all together, does not show that the term or period of insurance was extended from September, 1907, to September, 1909, and that the defendant's motion for a direction of a verdict in its favor ought to have been granted, and that the court erred in directing a verdict for the plaintiff.

The findings made by the court below, the judgment entered upon them, and the judgment entered upon the verdict are therefore vacated and the case remanded for a new trial, costs to appellant.

FRICK, C. J., and McCARTY, J., concur.